# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RITA ARTRIP,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00040 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| Commissioner of Social Security, | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand this case for further consideration of Artrip's mental impairments and their effect on her work-related abilities.

*I. Background and Standard of Review*

Plaintiff, Rita Artrip, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987.) Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966.) "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Artrip filed her first application for DIB on September 16, 1994, alleging disability as of October 1, 1993. (Record, ("R."), at 339). This claim was denied initially and on reconsideration. (R. at 339.) By decision dated March 2, 1996, an administrative law judge, ("ALJ"), denied Artrip's claim. (R. at 339.) Artrip requested review of the ALJ's decision, but the Appeals Council denied her request for review. (R. at 339.) While awaiting a decision regarding her request for review of her first application for DIB, Artrip filed a second application on October 8, 1996, alleging disability as of October 1, 1993. (R. at 339.) This application was denied initially and upon reconsideration, after which Artrip filed a request for hearing. (R. at 339.) Artrip's case was dismissed on December 24, 1998, for failure to appear for her hearing and for failure to respond to an order to show cause for failure to appear. (R. at 339.)

Artrip filed a third application for DIB on June 9, 2000, alleging disability as of February 9, 2000. (R. at 24, 66-68, 339.) The claim was denied initially and upon reconsideration. (R. at 44-46, 49, 51-52, 339.) Artrip then requested a hearing before an ALJ. (R. at 53.) The ALJ held a hearing on February 26, 2002, at which Artrip was represented by counsel. (R. at 339, 702-739.) By decision dated March 12, 2002, the ALJ denied Artrip's claim. (R. at 339-55.) Artrip did not pursue this claim further.

Artrip filed her current application for DIB on April 1, 2002, alleging disability as of February 9, 2000, based on lupus, lower back pain, leg pain, joint pain, headaches and depression and anxiety. (R. at 371-73, 381, 391.) The claim was denied initially and upon reconsideration. (R. at 359-61, 362, 364-66.) Artrip then requested a hearing before an ALJ. (R. at 367.) The ALJ held a hearing on May 5, 2004, at which Artrip was represented by counsel. (R. at 740-52.)

By decision dated May 28, 2004, the ALJ denied Artrip's claim. (R. at 24-29.) The ALJ found that Artrip last met the insured status requirements of the Act for DIB purposes on June 30, 2002, but not thereafter.[2] (R. at 28.) He further found that Artrip had not engaged in substantial gainful activity since February 9, 2000. (R. at 28.) The ALJ found that the medical evidence established that Artrip suffered from severe impairments, namely a back disorder and high borderline intellectual functioning, but he found that Artrip did not have an impairment or combination of impairments listed

---

[2]Because Artrip did not pursue the denial of her prior claim dated March 12, 2002, and because the ALJ determined that Artrip's date last insured was June 30, 2002, the issue currently before this court is whether substantial evidence supports the ALJ's decision that Artrip was not disabled during the period from March 13, 2002, to June 30, 2002.

-3-

at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28.) The ALJ found that Artrip had the residual functional capacity to perform simple, unskilled light work.[3] (R. at 28.) Thus, the ALJ found that Artrip could not perform any of her past relevant work. (R. at 28.) Based on Artrip's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Artrip could perform jobs existing in significant numbers in the national economy, including those of a maid-cleaner, a kitchen assistant, a hand packager, a nursery worker and a sorter-grader. (R. at 28-29.) Therefore, the ALJ found that Artrip was not under a disability as defined in the Act, at any time from March 13, 2002, through June 30, 2002, and that she was not eligible for benefits. (R. at 29.) *See* 20 C.F.R. § 404.1520(g) (2006).

After the ALJ issued his opinion, Artrip pursued her administrative appeals, (R. at 17-18), but the Appeals Council denied her request for review. (R. at 13-16.) Artrip then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006.) The case is before this court on Artrip's motion for summary judgment filed November 1, 2006, and the Commissioner's motion for summary judgment filed December 4, 2006.

## *II. Facts*

Artrip was born in 1959, (R. at 66, 371), which classifies her as a "younger

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

-4-

person" under 20 C.F.R. § 404.1563(c) (2006). She has a high school education and past relevant work experience as a housekeeper, a certified nurse's assistant and a desk clerk. (R. at 83, 88, 91, 387.)

In rendering his decision, the ALJ reviewed records from Cumberland Associates; Cherokee Community Mental Health Services; Palestine Regional Medical Center; Dr. Robert Herbert, D.O.; St. Mary's Hospital; Dr. Robert O. McGuffin, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dickenson County Community Services; Dr. Jennifer L. Bennett, M.D.; Dr. N. Zafar, M.D.; Norton Community Hospital; Corrigan-Camden Schools; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Arthur Amador, M.D.; Charlton S. Stanley, Ph.D., a psychologist; Stone Mountain Health Services; Howard Leizer, Ph.D., a state agency psychologist; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Shu Man Fu, M.D., Ph.D.; and Dr. Michael W. Bible, M.D.

Records show that Artrip was seen at Dickenson County Community Services from April 1994 through September 1994 for depression. (R. at 219-38.) She was diagnosed with major depression, recurrent, severe without psychotic features and dependent personality disorder. (R. at 228.) A Global Assessment of Functioning, ("GAF"), score of 51[4] was given. (R. at 228.) In July 1994, it was reported that Artrip's

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning

symptoms of depression had improved with medication. (R. at 235.)

Records from Cherokee Community Mental Health Services show that Artrip was first seen in December 1994 for suicidal ideation, auditory hallucinations, anger, irritability, flat affect, anxiety attacks, poor concentration and memory impairment. (R. at 118.) She was last seen in June 1997. (R. at 118.) A final diagnosis of depressive disorder, rule out major depression, and personality disorder, not otherwise specified, was given. (R. at 118.) A GAF score of 50[5] was given. (R. at 118.)

On October 5, 2000, Julie Jennings, Ph.D., a state agency psychologist, indicated that Artrip suffered from a nonsevere affective disorder. (R. at 202-15.) She indicated that Artrip had mild limitations in her activities of daily living and in maintaining social functioning. (R. at 212.) Jennings also indicated that Artrip had no difficulties in maintaining concentration, persistence or pace and had not experienced any episodes of decompensation. (R. at 212.)

On October 2, 2001, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Artrip at the request of Disability Determination Services. (R. at 261-68.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Artrip obtained a verbal IQ score of 55, a performance IQ score of 50 and a full-scale IQ score of 48. (R. at 261-62.) Lanthorn reported that Artrip was

---

...." DSM-IV at 32.

[5]A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-6-

"completely unmotivated" and he strongly believed that the WAIS-III results were invalid and grossly underestimated. (R. at 263.) Lanthorn diagnosed malingering, indicating that there existed a marked discrepancy between Artrip's allegations of stress or disability and the objective findings and that there was a distinct lack of cooperation during the evaluation. (R. at 267.) He also diagnosed personality disorder, not otherwise specified, with dependent, avoidant and passive-aggressive features. (R. at 267.) Lanthorn assessed Artrip's then-current GAF score at 65-70.[6] (R. at 267.) Lanthorn completed a mental assessment indicating that Artrip had a satisfactory to seriously limited, but not precluded, ability to make occupational, performance and personal/social adjustments, with exception of the ability to understand, remember and carry out simple job instructions, which was deemed more than satisfactory. (R. at 269-70, 549-50.) Lanthorn indicated that it was questionable that Artrip had a satisfactory ability to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 549-50.)

On September 3, 2002, Lanthorn evaluated Artrip at the request of Disability Determination Services. (R. at 615-19.) Lanthorn reported that Artrip seemed significantly less than motivated to respond as she was capable of and attempted to appear psychologically worse off than she actually was. (R. at 615.) Artrip reported that she had visual hallucinations on a daily basis. (R. at 617.) She reported that she heard her deceased mother and daughter's voice talking to her. (R. at 617.) Lanthorn reported that there were times during the evaluation that Artrip seemed purposefully

---

[6]A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

vague in reporting her history and symptomatology. (R. at 619.) He reported that Artip reported auditory and visual hallucinations with a certain casualness that belied the inherent seriousness of the symptomatology. (R. at 619.) He noted that Artrip was currently not taking any psychotropic medications for the alleged hallucinations. (R. at 619.) Lanthorn reported that major depressive disorder, pain disorder, malingering and personality disorder should be ruled out. (R. at 618.) He diagnosed borderline intellectual functioning and assessed a GAF score of 60-65. (R. at 618.) Lanthorn reported that Artrip had mild to moderate limitations in her overall adaptability skills. (R. at 619.)

On January 31, 2002, Dr. Arthur Amador, M.D., evaluated Artrip at the request of Artrip's attorney. (R. at 290-92, 593-95.) Artrip reported auditory and visual hallucinations. (R. at 290, 593.) She reported that she would hear and see her deceased mother and daughter. (R. at 290, 593.) Dr. Amador diagnosed major depression, single episode, severe, with psychotic features. (R. at 292, 595.) Dr. Amador assessed a GAF score of 50. (R. at 292, 595.) Dr. Amador completed a mental assessment indicating that Artrip had no useful ability to make occupational, performance or personal/social adjustments, with the exception of the ability to maintain personal appearance, which he deemed seriously limited, but not precluded. (R. at 293-95.)

On February 15, 2002, Charlton S. Stanley, Ph.D., a psychologist, evaluated Artrip at the request of Artrip's attorney. (R. at 300-11, 597-608.) Artrip reported constant suicidal ideation. (R. at 305, 602.) Artrip reported that she was 16 years old when her mother died and that she had been depressed since that time. (R. at 302,

599.) She reported that her daughter was killed in a motor vehicle accident in December 2000. (R. at 302, 599.) Atrip reported that her daughter was pregnant at the time and that the baby died as a result of the accident. (R. at 302, 599.) Stanley reported that Artrip rocked constantly throughout the interview and that she appeared to be distracted and withdrawn. (R. at 304, 601.) Artrip reported that she heard her mother talking to her. (R. at 304, 601.) She reported that she had been "seeing" her deceased mother and father. (R. at 304, 601.) When asked about gustatory hallucinations, Artrip reported that at times she believed that she tasted blood on her tongue. (R. at 304, 601.) Stanley reported that Artrip did not appear to be able to understand and implement simple information and directions. (R. at 309, 606.) He reported that Artrip had no ability to maintain persistence and concentration on any kind of task for a full work schedule. (R. at 309, 606.) He reported that Artrip had no ability to interact with people. (R. at 309, 606.) Stanley diagnosed generalized anxiety disorder, major depression, recurrent, severe, with psychotic features, dementia, not otherwise specified, and a nightmare disorder. (R. at 309, 606.) Stanley assessed a GAF score of 20-22.[7] (R. at 309, 606.) Stanley recommended that Artrip see a neurologist. (R. at 310, 607.) Stanley also recommended that Artrip be hospitalized for her symptoms of depression. (R. at 310, 607.)

In May 2002, Artrip received treatment from Stone Mountain Health Services

---

[7]A GAF of 11-20 indicates "[s]ome danger of hurting self or others ... OR occasionally fails to maintain minimal personal hygiene... OR gross impairment in communication...." DSM-IV at 32. A GAF of 21-30 indicates that the individual's "[b]ehavior is considerably influenced by delusions of hallucinations OR serious impairment in communication or judgment ... OR inability to function in almost all areas...." DSM-IV at 32.

for her symptoms of depression. (R. at 329.) Artrip was diagnosed with a depressive disorder with some psychotic features. (R. at 329.) Her symptoms included social isolation, frequent crying episodes, chronic sadness and visual hallucinations. (R. at 329.) Crystal Burke, a licensed clinical social worker, reported that Artrip's mental status, coupled with her physical medical issues, significantly limited all activities of daily living. (R. at 329.) On November 19, 2002, Burke completed a mental assessment indicating that Artrip had a severely limited, but not precluded, ability to carry out short, simple instructions and detailed instructions. (R. at 522-23.) Burke indicated that Artrip had no useful ability to understand and remember short, simple instructions or detailed instructions, to make judgments, to interact appropriately with the public, to interact appropriately with supervisors, to interact appropriately with co-workers, to respond appropriately to work pressures and to respond appropriately to changes in a routine work setting. (R. at 522-23.) In November 2003, Burke completed a second mental assessment indicating that Artip had a seriously limited, but not precluded, ability to no ability in all occupational, performance and personal adjustments. (R. at 675-77.) Artrip continued to treat with Burke through 2004 for her complaints of depression and anxiety. (R. at 661-74.)

On September 11, 2002, Howard Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Artrip suffered from mental retardation and a personality disorder. (R. at 620-33.) Leizer indicated that Artrip had mild limitations in her activities of daily living and in

-10-

maintaining social functioning. (R. at 630.) He indicated that Artrip had moderate[8] limitations in maintaining concentration, persistence or pace and that she had not experienced any episodes of decompensation. (R. at 630.) This assessment was affirmed by Hugh Tenison, Ph.D., another state agency psychologist, on March 7, 2003. (R. at 620.)

Leizer also completed a mental assessment indicating that Artrip was moderately limited in her ability to understand, remember and carry out detailed instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 642-44.) This assessment was affirmed by Tenison on March 7, 2003. (R. at 644.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See*

---

[8]Leizer marked both "mild" and "moderate" to describe Artrip's limitations in maintaining concentration, persistence or pace. (R. at 630.)

-11-

20 C.F.R. § 404.1520 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 28, 2004, the ALJ denied Artrip's claim. (R. at 24-29.) The ALJ found that Artrip last met the insured status requirements of the Act for DIB purposes on June 30, 2002, but not thereafter. (R. at 28.) The ALJ found that the medical evidence established that Artrip suffered from severe impairments, namely a back disorder and high borderline intellectual functioning, but he found that Artrip did

not have an impairment or combination of impairments listed at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28.) The ALJ found that Artrip had the residual functional capacity to perform simple, unskilled light work. (R. at 28.) Based on Artrip's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Artrip could perform jobs existing in significant numbers in the national economy. (R. at 28-29.) Therefore, the ALJ found that Artrip was not under a disability as defined in the Act, at any time from March 13, 2002, through June 30, 2002, and that she was not eligible for benefits. (R. at 29.) *See* 20 C.F.R. § 404.1520(g) (2006).

In her brief, Artrip argues that the ALJ erred by failing to give proper weight to the opinions of her treating mental health providers. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-10.) Artrip also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment other than high borderline intellectual functioning. (Plaintiff's Brief at 10-13.) Artrip does not challenge the ALJ's finding as to her physical impairments or her physical residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether

-13-

the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Artrip argues that the ALJ erred by failing to find that she suffered from a severe mental impairment other than high borderline intellectual functioning. (Plaintiff's Brief at 10-13.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding that Artrip did not suffer from a severe mental impairment other than high borderline intellectual functioning. It appears that the ALJ relied upon Lanthorn's September 2002 assessment in determining that Artrip suffered from only

-14-

high borderline intellectual functioning. (R. at 27.) However, the ALJ failed to note that Lanthorn found that Artrip had mild to moderate limitations in her overall adaptability skills. (R. at 619.) Lanthorn also assessed Artrip's GAF score at 60-65, indicating that she had mild to moderate difficulty in social, occupational or school functioning. (R. at 618.) In addition, Dr. Amador diagnosed major depression with psychotic features and assessed Artrip's GAF score at 50. (R. at 292, 595.) Dr. Amador found that Artrip had no useful ability to make occupational, performance or personal/social adjustments in 14 out of 15 areas. (R. at 293-95.) Furthermore, state agency psychologist Leizer found that Artrip suffered from mental retardation and a personality disorder. (R. at 620-33.) Leizer found that Artrip had moderate limitations in her ability to perform various work-related tasks. (R. at 642-44.) While the ALJ is not bound to accept a medical source's opinion as to a claimant's residual functional capacity, he must consider any such opinion and explain what, if any, weight was given to it or why he chose to reject it. *See* 20 C.F.R. § 404.1546 (2006); *see also King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). In this case, the ALJ offered no explanation of his weighing of the medical evidence on this issue. Thus, I cannot find that substantial evidence exists in the record to support the ALJ's rejection of the medical evidence or his finding with regard to Artrip's mental residual functional capacity.

*IV. Conclusion*

For the foregoing reasons, Artrip's and the Commissioner's motions for summary judgment will be denied, and the court will vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further

-15-

consideration of Artrip's mental impairments and their effect on her work-related abilities.

An appropriate order will be entered.

DATED: This 16th day of March 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE